SCOTT E. BRADFORD, OSB # 062824
United States Attorney
District of Oregon
**SCOTT M. KERIN, OSB # 965128**
Assistant United States Attorney
Scott.Kerin@usdoj.gov
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

**UNITED STATES OF AMERICA**

**v.**

**JOSUE ISAI VALDEZ RAUDALES,**

**Defendant.**

**3:26-cr-00067-IM**

**GOVERNMENT'S SENTENCING MEMORANDUM**

The government asks the Court to impose a sentence of 12 months' imprisonment, to be followed by a three-year term of supervised release. The U.S. Probation Office has made the same recommendation to the Court.

The defendant, a street-level fentanyl dealer, was involved in selling an incredibly addictive, destructive, and deadly poison within Portland, Oregon. Fentanyl has been devastating the community, and this defendant was preying upon some of our most vulnerable community members for his own personal profit. Given the nature of the case, defendant's advisory sentencing guidelines, the societal harm caused by fentanyl, the defendant's prior

felony conviction for unlawful re-entry by a removed alien, his repeated arrests for fentanyl related drug trafficking crimes, and his personal history and characteristics, the government believes the requested sentence is both reasonable and justified.

**A. Summary of Proceedings.**

On August 7, 2026, the defendant waived indictment by the grand jury and pled guilty to Count 1 of the Superseding Information which charged him with the Possession with Intent to Distribute Fentanyl, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(C). The maximum sentence the Court may impose is a term of 20 years' imprisonment, fine of $1,000,000, and at least three years of supervised release. There is also a $100 fee assessment.

A Presentence Report (PSR) has been completed. The government has no objection to the facts underlying the defendant's count of conviction (PSR ¶¶ 20 - 23), the Sentencing Guideline calculations (PSR ¶¶ 28 - 37), and defendant's criminal history (PSR ¶¶ 40, 43 – 46) are accurately outlined in both the PSR and plea agreement.

In his plea agreement defendant admitted that:

> [O]n or about February 25, 2026, within the District of Oregon, he knowingly and intentionally possessed with intent to distribute distributed approximately 24 grams of fentanyl. Defendant knew the substance was fentanyl. Fentanyl is a Schedule II controlled substance.

Plea Agreement ¶ 6.

The defendant's arrest came about after a confidential informant told Drug Enforcement Administration (DEA) agents that the defendant, who he knew as "Kaled," was a fentanyl dealer. On February 25, 2026, DEA agents used the informant to order one-half ounce of fentanyl from the defendant. When the defendant showed up to complete the deal the agents attempted to

arrest him and the defendant then fled in his vehicle, almost striking a government car. The defendant did not get very far after he drove into a construction area and could not go any further. At this point the agents contacted and arrested the defendant.

A search of the defendant's vehicle resulted in the seizure of approximately 24 grams of fentanyl, $4,452 in cash, multiple digital scales, a container of plastic bags, the defendant's identification, as well as a false identification card. When the defendant was interviewed he eventually admitted that the money in the car was from selling fentanyl.

**B. Government's Sentencing Guideline Calculations.**

The Court, "in determining the particular sentence to be imposed," is required to consider the "sentencing range established" by the U.S. Sentencing Guidelines. 18 U.S.C. § 3553(a)(4). "The Guidelines are 'the starting point and the initial benchmark,'. . . and are to be kept in mind throughout the process." *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (quoting *Kimbrough v. United States*, 552 U.S. 85, 108 (2007)). "All sentencing proceedings are to begin by determining the applicable Guideline range." *Id.*

**Base Offense Level (18)**

The parties agree, given the plus/minus net weight uncertainty value associated with the laboratory testing, that it is reasonable to conservatively agree that the defendant possessed between 16 and 24 grams of a mixture and substance containing fentanyl for a Base Offense Level of 18, pursuant to USSG §§ 1B1.3 and 2D1.1(a). Plea Agreement ¶ 8. The U.S. Probation Office has also adopted this Base Offense Level. PSR ¶ 28.

///

///

**Safety Valve (n/a)**

At this point, the government does not believe the defendant satisfies the "safety valve" criteria in 18 U.S.C. § 3553(f) and USSG § 2D1.1(b)(18), and thus does not recommend a two-level downward departure in defendant's Sentencing Guidelines range. PSR ¶ 29, Plea Agreement ¶ 9.

**Acceptance of Responsibility (-3)**

Based upon defendant's guilty plea and acceptance of responsibility, pursuant to USSG § 3E1.1, the parties ask that the Court grant the defendant a three-level reduction in his offense level. PSR ¶¶ 32 - 33, Plea Agreement ¶ 10.

**3553(a) Variance (-3)**

Pursuant to 18 U.S.C. § 3553(a), based upon the nature of the offense, the history and characteristics of the defendant, defendant's indication at an early stage in the proceedings about his desire to resolve his case, how similarly situated defendants have been handled by the USAO and the courts, and to achieve a fair and just resolution of the case, the government will recommend that the Court to grant the defendant a three-level downward variance in his overall offense level. Plea Agreement ¶ 11. The U.S. Probation Office has also recommended a similar downward variance. *See* PSR Recommended Sentence, at *1.

With the government's three-level downward variance pursuant to 3553(a), we believe defendant's Adjusted Offense Level would be 12, and with a Criminal History Category of II, his advisory sentencing guideline range is between 12 to 18 months' imprisonment.

Defendant has been in federal custody since his arrest on February 25, 2026.

///

**C. Government's Recommended Sentence.**

Pursuant to 18 U.S.C. § 3553(a), we ask the Court to impose a sentence of 12 months' imprisonment, to be followed by a three-year term of supervised release.

If there was ever any doubt as to the value behind the federal prosecution of street-level fentanyl dealers operating in Portland, Oregon, the defendant's case should put those concerns to rest. Prior to his federal arrest in Portland, the defendant sold fentanyl in California, Utah, and Oregon. Additionally, the defendant's four drug dealing arrests all came after he was convicted in 2020 for unlawfully re-entering the United States and then deported again. PSR ¶ 40. Although Portland was not where he started dealing fentanyl, due to the U.S. Attorney's Office authorizing his federal arrest it became where the defendant was finally stopped.

As the PSR notes, in September 2023, the defendant was arrested and charged in San Francisco, California with possession of a controlled substance for sale. PSR ¶ 43. The case involved fentanyl, methamphetamine, and heroin. *Id.* The defendant was released on his own recognizance and fled. *Id.* A bench warrant was issued and remains outstanding. *Id.*

In December 2023, the defendant was arrested in Spanish Folk, Utah and charged with possession with intent to distribute. PSR ¶ 44. The case involved fentanyl, heroin, and cocaine. *Id.* Almost three months after his arrest he was formally charged and a warrant for his arrest was issued. *Id.* Once again, the defendant fled the jurisdiction.

In October 2024, the defendant was arrested by the Portland Police and charged with the delivery of a controlled substance. PSR ¶ 45. The case once again involved fentanyl. *Id.* Despite his prior failures to appear and outstanding warrants, the defendant was granted pretrial

///

release. *Id.* He failed to appear for court the next day and a warrant was issued for the defendant's arrest. *Id.*

Every time the defendant was arrested for drug dealing on state charges he was released, failed to appear for court, and simply went back to dealing fentanyl. Repeatedly, the state system failed to stop the defendant and hold him accountable for the harm he was causing to the community. Fentanyl is, unquestionably, an extremely addictive, destructive, and deadly poison. According to law enforcement:

> Fentanyl and methamphetamine remain the primary drug threats, affecting community livability and contributing to drug-related overdose deaths and criminal activity, including crimes against persons and property in the HIDTA region. In 2023, fentanyl was linked to 75.9% of overdose deaths in Oregon and 51% in Idaho. Methamphetamine was present in 63.5% of Oregon's overdose deaths and 38% of Idaho's. Together, these two substances accounted for 41.3% of overdose fatalities in both states.

OREGON-IDAHO HIGH INTENSITY DRUG TRAFFICKING AREA (HIDTA) 2026 THREAT ASSESSMENT, 2025, at 5 (https://oridhidta.org/reports).

The death toll from fentanyl is truly frightening. For Americans aged 18 to 45, overdoses – primarily the result of illicit fentanyl – remain the leading cause of death. *CDC Reports Nearly 24% Decline in U.S. Drug Overdose Deaths*, CDC NEWSROOM (Feb. 25, 2025); *DEA Administrator on Record Fentanyl Overdose Deaths,* GET SMART ABOUT DRUGS (August 17, 2024). In 2022, within the United States, fentanyl was responsible for an average of more than 200 deaths every day and a total of 73,654 people died from fentanyl overdoses. *Are Fentanyl Overdose Deaths Rising in the U.S.*, USAFACTS (Sept. 27, 2023). Here in Oregon, between 2015 and 2021, Oregon experienced a 932% increase in fentanyl overdose deaths. *Fentanyl by State Report*, FAMILIES AGAINST FENTANYL (Feb. 4, 2023). In 2022, Oregon alone experienced a

total of 839 fentanyl related overdose deaths. OREGON HEALTH AUTHORITY OREGON DEPARTMENT OF EDUCATION FENTANYL & OPIOID RESPONSE TOOLKIT FOR SCHOOLS (January 2024). In 2023, within Oregon there were 1,833 overdose deaths, and of those 1,272 were the result of synthetic opioids, such as illicit fentanyl. *Oregon Overdose Prevention Dashboard*, OREGON HEALTH AUTHORITY (May 1, 2025). In 2023, "Oregon had the highest rate of increase in fentanyl deaths in the nation with a one-year increase of more than 67[%], compared to a national average of 5[%]." *Oregon, Washington see largest increases in fentanyl deaths since last year*, KPTV 12 (Sept. 26, 2023).

Even with the most recent decreases in overdose deaths, both nationally and in Oregon, "[f]entanyl continues to be the primary cause of drug overdose deaths in the United States," to include here within Oregon. *Fentanyl Continues to Be the Leading Cause of Overdose Deaths. What's Being Done to Combat Trafficking into the United States?,* WATCHBLOG: FOLLOWING THE FEDERAL DOLLAR, U.S. GOVERNMENT ACCOUNTABILITY OFFICE (Sept. 4, 2025); *Oregon overdose deaths are down, CDC data shows,* OREGON HEALTH AUTHORITY (May 16, 2025) (While "Oregon's overdose deaths decreased 22% between December 2023 and December 2024, a trend similar to that experienced nationwide . . . The count is still much higher than pre-pandemic years, with 1,480 deaths within that one-year time span, CDC data show."); *U.S. Overdose Deaths Decrease Almost 27% in 2024,* NATIONAL CENTER FOR HEALTH STATISTICS, U.S. CENTERS FOR DISEASE CONTROL AND PREVENTION (CDC) (May 14, 2025)( https://www.cdc.gov/nchs/pressroom/ releases/20250514) (in 2024 "there were there were an estimated 80,391 drug overdose deaths in the United States – a decrease of 26.9% from the

///

110,037 deaths estimated in 2023" and of those deaths, in 2023, 76,282 involved synthetic opioids (fentanyl) and in 2024, 48,422 involved synthetic opioids (fentanyl)).

We have no doubt that the defendant initially came into the United States seeking more opportunities than he thought were available to him in Honduras. However, that experience does not provide any justification or excuse for the harm he in turn inflicted upon others. Every time the defendant sold fentanyl he risked selling the person a poison that could kill them. At a minimum, every time he sold fentanyl he perpetuated the customer's cycle of addiction.

Accordingly, after evaluating the competing sentencing factors outlined in 18 U.S.C. § 3553(a) which include the nature and circumstances of the offense; the defendant's characteristics; the need for the sentence imposed to reflect the seriousness of the offense; the need for the sentence to promote respect for the law; the need for the sentence to afford adequate deterrence to criminal conduct; the need for the sentence to provide just punishment for the offense; the need to protect the public from further crimes of the defendant; and, the need to provide the defendant with needed training or other corrective treatment, we believe a sentence of 12 months' imprisonment is reasonable. We ask the Court to impose it, to be followed by a three-year term of supervised release.

///

///

///

At the time of sentencing we ask the Court dismiss the original Indictment.

There is an appeal waiver.

Following his time in custody the defendant will likely be deported to Honduras.

Dated: October 29, 2026.

Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney

/s/ Scott Kerin

SCOTT M. KERIN, OSB # 965128
Assistant United States Attorney